Spear, J.
The errors complained of by plaintiff in error, as well as by Vandenbark, cross-petitioner in error, are as to the affirmance of the judgment of the common pleas allowing to Mrs. McGowan $500 in lieu of a homestead, and in holding that the probate court had jurisdiction of the controversies between the judgment creditors as to priorities of their *37 respective claims against Mrs. McGowan. The plaintiff: in error further insists that the circuit court erred in holding that the judgments of Vandenbark and the Bank were prior liens to that of the plaintiff in error.
1. Respecting the claim of Mrs. McGowan for allowance in lieu of homestead. The first objection urged is that the judgment of the common pleas in favor of Mrs. McGowan is not supported by any evidence. An inspection of the record, including the bill of exceptions, makes it apparent that the facts set forth in the answer of Mrs. McGowan were not seriously contested at the trial. The evidence offered by her was not contradicted; and, although brief and somewhat fragmentary, tended, we think, to support the material elements of her claim. We cannot say that the trial court erred in its conclusion and finding that all the allegations of her answer were true. It is, however, strenuously contended that, admitting the facts to be as the court found them, yet the intent of our homestead laws being to give exemptions to heads of families in order to preserve the home for the benefit of the family and to keep the members together, and not fof the benefit of any individual, Mrs. McGowan is not entitled to the allowance claimed because it does not appear that she was, in this sense, the head of the family. The proposition is urged in an able and ingenious brief by counsel for the cross-petitioner in error. The argument, however, if accepted, would seem to defeat the apparent intent of section 5319 of the Revised Statutes, and to require the overruling of this court’s holding in Kimmel v. Paronto, 52 Ohio St., 468. The section retejed to reads as follows: “When a married woman sues or is sued, like proceedings shall be had and judgment rendered and enforced as if she were unmarried, and her property and estate shall be liable for the judgment against her, but she shall be entitled to the benefits of all exemptions to heads of families.” *38 In giving construction to this section the court, in the case above cited, held: “Under section 5319, of the Revised Statutes, a married Avoman is entitled to the benefit of all exemptions allowed by law to the heads of families, though she be living apart from her husband, and have no child or children living with or supported by her.” “The last clause of the section,” it was further held, “does not mean that to entitle a married woman to such exemptions she must be the head of a family, and it is not essential to her right to them that she shall be living with her husband, or have a child or children living with or supported by her.” In principle the case is on all fours with the case at bar. Attention is called by counsel to this distinction in fact between the cases, viz: The claimant in the Kimmel case demanded wearing apparel and household goods as exempt; in the present case the demand is for money. But we are satisfied that there is no distinction in legal effect, and that, unless we are prepared to overrule the Kimmel case, we cannot do other than sustain the ruling below. We think it wiser to adhere to that decision.
It may be proper to add that we have not overlooked other sections relating to exemptions, and while it may be conceded that there is an absence of entire harmony in the phraseology in parts of the legislation, yet the purpose of the whole we think not difficult to ascertain. Attention is specially directed .by counsel to section 5441, as amended April 12,1884. The full scope of the amendment may be open to some question, but there is not sufficient reason to conclude that the amendment was intended to repeal or modify the effect of section 5319,' and we are of opinion that the two may well stand together. As conclusion, we do not think the courts below erred in making to Mrs. McGowan the allowance in lieu of homstead.
2. The question as to the jurisdiction of the probate court to adjudicate the controversies between *39 the judgment creditors of Mrs. McGowan becomes unimportant in view of the conclusions stated further on. No objection was made in the common pleas as to its jurisdiction on appeal, and no question as to that is made here.
3. As between the judgment creditors, what was the rightful order of priority? It is insisted by plaintiff in error that he has the first lien on the fund belonging to Mrs. McGoAvan because his action in the common pleas was commenced first. The claim of Vandenbarlc to priority rests upon the assumption that, Avhile his petition was filed after that of plaintiff in error, yet he first got service upon the defendants, and the action is to be deemed commenced, not necessarily at the date of the filing of the petition, but at the date of the summons which is served, or at the date of the entry of appearance where voluntary appearance is entered. The record discloses that the trial court had before it, in determining priorities, the pleadings only. Vandenbark’s answer alleges that he “duly caused a summons to be issued from said court of common pleas on the said George L. Foley, as said assignee, and the same was duly served upon him by the proper officer on the 8th of January, 1896; said Mattingly and Martha E. Mc-GoAvan duly entered their appearance in said case and Avaive issue and service of summons.” Shaw’s ansAver avers tliat “on the tenth of December, 1895, he began an action,” etc. (referring to the creditor’s bill), * * "* “that the defendant, Martha E. McGowan, was served Avith summons; that * * * Foley, assignee, waived service and entered voluntary appearance in said action.” The precise point made in favor of Vandenbarlc is that the record does not show any summons issued in the Shaw case for Foley, assignee, and does not show that the assignee entered his appearance before summons was served on him in the Vandenbark case, and that Vandenbark’s lien stands fixed as of January 8th, 1896, until *40 Shaw alleges and proves an entry of appearance previous to that date. Probably this was the view taken by the circuit court when it placed the Bank ahead of Shaw, although we have no brief by the Bank definitely stating the ground. However, it seems clear to us that this proposition is fatally faulty in that it avoids giving force to the allegation in the answer of Shaw that he began his action on the tenth day of December. While it may be claimed that this averment partakes somewhat of the nature of a legal conclusion, yet it is not more obnoxious to that objection than many other averments which we meet with in pleadings that are regarded as allegations of fact, for instance that in Vandenbark’s cross-petition to the effect that on the date named he recovered a judgment, etc.; and, standing uncontradicted either by reply or proof, and taken in connection with the subsequent averment of entry of appearance by the assignee, it would, we think, be reasonable to give to it the force of an allegation of fact, and as implying that proper service was had at the date named. The presumption of fact as to service in time is somewhat strengthened by what would be usual in a case where, as here, a creditor would be impelled to at least usual diligence.
The conclusion requires a reversal of the judgment of the circuit court as to priorities and the affirmance of that of the common pleas.

Reversed.